**FILED**

NOV 1 5 2017

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. **17CR 739** |
| | ) | |
| v. | ) | Violation: Title 18, United States Code |
| | ) | Section 1343  **JUDGE GETTLEMAN** |
| DANIEL GLICK | ) | |
| | ) | **MAGISTRATE JUDGE KIM** |

## COUNT ONE

The ACTING UNITED STATES ATTORNEY charges:

1.      At times material to this Information:

a.      Defendant DANIEL GLICK was the President of three companies, which he owned and operated, namely:  Financial Management Strategies, Inc.; Glick Accounting Services, Inc.; and Glick & Associates, Ltd.   The companies were located in Orland Park, Illinois.  Through those companies, defendant GLICK provided accounting, tax, investment, and financial services to clients, which included preparing tax returns, providing financial advice, making investments, and paying bills for clients.

b.      Defendant GLICK held himself out as an accountant and an investment adviser.

c.      Citizens Financial Bank, FSB, currently known as First Merchants Bank (Citizens Bank), located in Flossmoor, Illinois, was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation (FDIC).

d.      U.S. Bank National Association (U.S. Bank), located in Flossmoor, Illinois, was a financial institution, the deposits of which were insured by the FDIC.

2.      Beginning in or about no later than February 2011, and continuing until in or about at least April 2017, in the Northern District of Illinois, Eastern Division, and elsewhere,

DANIEL GLICK,

defendant herein, devised, intended to devise, and participated in a scheme to defraud clients and financial institutions, and to obtain money and property from those clients and financial institutions by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts, which scheme affected a financial institution and is further described below.

3.      It was part of the scheme that defendant GLICK engaged in a fraudulent scheme designed to benefit himself and his companies to the financial detriment of clients and two financial institutions.  As part of his scheme, defendant GLICK misappropriated at least several million dollars of funds from clients and financial institutions, provided financial institutions with forged checks and other documents, and lied to clients about the use, status, and safety of their invested funds. Most of the funds that defendant GLICK misappropriated belonged to elderly clients.  In order to continue and conceal his scheme, defendant created and provided false and misleading account statements to clients and made Ponzi-type payments to clients.

**False Representations**

4.      It was further part of the scheme that defendant GLICK obtained funds from clients by falsely representing that he would use clients' funds solely for their benefit, which included investing clients' funds on their behalf, and paying bills and expenses on

their behalf. Defendant GLICK also made false representations to clients concerning the status of the clients' funds and the way in which defendant GLICK actually used their funds. Contrary to these representations, defendant GLICK misappropriated a significant portion of clients' funds for his own benefit and the benefit of his business associates, and to make Ponzi-type payments to or for other clients.

5.     It was further part of the scheme that defendant GLICK obtained funds from clients by making false representations concerning the safety of their funds, including that he would safeguard their funds, and that those funds would last for many years under his management. In fact, defendant GLICK knew that he was not safeguarding all of the clients' funds, but intended to and did misappropriate funds for other purposes.

6.     It was further part of the scheme that, in order to continue the scheme, and to conceal his misappropriation of funds, defendant GLICK intentionally created and provided false and misleading account statements to clients and their families, which contained false information concerning the clients' assets. Defendant GLICK falsely inflated the amount of cash available, the amount of stock purchased for certain clients, and the amount of interest earned. In fact, defendant GLICK knew that the clients' account statements were falsely inflated, and significantly misstated the clients' assets.

7.     It was further part of the scheme that defendant GLICK misled clients concerning stock that he purchased in certain Israeli companies using investors' funds. Specifically, defendant GLICK failed to disclose that the clients could not get their funds back unless certain conditions were satisfied, namely, that the Israeli companies were purchased or their stocks were sold publicly. Defendant GLICK failed to disclose to clients

3

that there was no definitive date on which that would occur, and it might never occur. Because defendant GLICK placed the Israeli stock in his companies' names, the clients had no ownership interest in that stock and could not direct the Israeli companies to take any actions concerning the stock.

8.      It was further part of the scheme that defendant GLICK convinced one group of clients, Ev.War.'s family, to pay him a $700,000 fee for his services. Defendant GLICK failed to disclose that he had misappropriated hundreds of thousands of dollars from that family prior to the date on which they agreed to pay the fee that he requested. Defendant GLICK also failed to disclose that he had misappropriated more than $1 million from another family, Na.Haus.'s family, prior to that date.

9.      It was further part of the scheme that defendant GLICK fraudulently obtained hundreds of thousands of dollars that belonged to two elderly clients, namely, his mother-in-law and father-in-law, by forging their signatures on letters and checks, and by transferring funds from their checking account to his company's checking account. By forging those signatures and making those transfers, defendant GLICK deceived two financial institutions, Citizens Bank and U.S. Bank, and caused them to provide funds to him, even though defendant GLICK knew that he was not authorized to obtain those funds.

### Misappropriation of Clients' Funds

10.     It was further part of the scheme that defendant GLICK misused and misappropriated millions of dollars that belonged to his clients, and used those funds for his own benefit, and for the benefit of his companies and his business associates. Defendant GLICK's misappropriation of clients' funds included the following:

4

a. **Personal and Business Expenses:** Defendant GLICK misappropriated clients' funds to pay for personal expenses and business expenses, including the purchase of a Mercedes Benz, payment of his mortgage, and repayment of two business loans.

b. **Payments to a Business Associate:** Defendant GLICK misappropriated clients' funds to pay hundreds of thousands of dollars to a long-time business associate (Da.Slag.) and his family. Defendant GLICK failed to disclose to his clients the payments that defendant GLICK made to Da.Slag. using clients' funds.

c. **Payments to Another Business Associate:** Defendant GLICK paid at least approximately $1,000,000 to another associate (E.For.) and other people or entities for the benefit of E.For. A substantial portion of those funds belonged to defendant GLICK's clients. Defendant GLICK failed to disclose those payments to his clients.

d. **Ponzi-type Payments:** Defendant GLICK misappropriated a portion of his clients' funds to make Ponzi-type payments, namely, to make payments to other clients. For example, defendant GLICK used other clients' funds to repay a client who discovered that defendant GLICK had misappropriated and misused her funds to make payments to E.For.

e. **Expenses:** In order to conceal the scheme, defendant GLICK continued to pay bills and expenses on behalf of certain clients, even though defendant GLICK knew that those clients' funds were gone. For example, defendant GLICK used other clients' funds in a Ponzi-type manner to pay nursing home expenses for an elderly client, whose funds defendant GLICK had already depleted.

11.     It was further part of the scheme that defendant GLICK concealed his misappropriation and misuse of clients' funds by co-mingling those funds with money belonging to defendant GLICK and his companies, as well as money that belonged to other clients.     By co-mingling those funds, defendant GLICK made it difficult to identify or trace how defendant GLICK used those funds.

12.     It was further part of the scheme that, as a result of his actions, defendant GLICK caused losses to clients of at least approximately $5.2 million.

13.     It was further part of the scheme that defendant GLICK misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence of the scheme, the purposes of the scheme, and acts done in furtherance of the scheme.

14.     On or about November 4, 2016, in the Northern District of Illinois, Eastern Division, and elsewhere,

DANIEL GLICK,

defendant herein, for the purpose of executing the scheme to defraud, did knowingly cause to be transmitted in interstate commerce, from Orland Park, Illinois to a client, Na.Haus., by means of wire communication, certain writings, signs, and signals, namely, an interstate email, and an attached account statement, sent electronically by defendant GLICK in Illinois, to Na.Haus., through a Google Gmail server located outside of Illinois, which email attachment contained false information concerning the total assets owned by Na.Haus.'s elderly relative at that time;

In violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The ACTING UNITED STATES ATTORNEY further alleges:

1.     Upon conviction of an offense in violation of Title 18, United States Code, Section 1343, as set forth in this Information, defendant shall forfeit to the United States of America any property which constitutes and is derived from proceeds traceable to the offense, as provided in Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

2.     The property to be forfeited includes, but is not limited to:

a.     a personal money judgment in the amount of approximately $5,200,000;

b.     the following specific property:

i. all stock and ownership interests in three companies owned by defendant DANIEL GLICK, namely, Financial Management Strategies, Inc., Glick Accounting Services, Inc. and/or Glick & Associates, Ltd.;

ii. stocks and/or shares purchased in the name of defendant DANIEL GLICK (a/k/a Daniel H. Glick and Daniel Howard Glick), and/or in the name of his companies, Financial Management Strategies, Inc., Glick Accounting Services, Inc. and/or Glick & Associates, Ltd., and payments relating to such stocks and shares, from the entities listed below: and

iii. loan repayments, line of credit repayments, and property held as collateral relating to such, owed to defendant DANIEL GLICK (a/k/a Daniel H. Glick and Daniel Howard Glick), and/or his companies, Financial Management Strategies, Inc., Glick Accounting Services, Inc. and/or Glick & Associates, Ltd., and payments relating to such loans and lines of credit, from the entities listed below:

(1)     Nutristat, Inc.
Downers Grove, Illinois;

7

(2)    White Cyber Knight, Inc.
Tel Aviv, Israel;

(3)    Pimi Agro Cleantech, Ltd.
Kiryat Tivon, Israel;

(4)    Balance Agrotech, Inc.
Kiryat Tivon, Israel;

(5)    Quartet Technologies, Ltd.
Tel Aviv, Israel;

(6)    Pixitier Maps, Inc.
Haifa, Israel;

(7)    Rewardy, Inc.
New York, New York, and Tel Aviv, Israel;

(8)    Correlata Solutions, Ltd,
Yavne, Israel;

(9)    Firmitas Cyber Solutions, Ltd.
Kfar Saba, Israel;

(10)    Artincam, Ltd.
Herzelia Pituach, Israel;

(11)    Beat Med, Ltd.
Karimiel, Israel;

(12)    BIOP-Medical, Ltd.
Ramat Gan, Israel;

(13)    Mprest c/o OurCrowd
Jerusalem, Israel;

(14)    Salead, LTD
Tel Aviv, Israel;

(15)    Vtool, LTD
Bnei Brak, Israel.

3.     If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code Section 853(p).

_____
ACTING UNITED STATES ATTORNEY

9